STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| FRANK BELCZYK, SOPHIE BELCZYK, MICHAEL JURICH, DOLORES SCAIA, and JACK E. TALLON, on behalf of themselves and all other persons similarly situated; UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION, AFL-CIO/CLC; and UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION, AFL-CIO/CLC, LOCAL 3059,<br><br>                Plaintiffs,<br><br>v.<br><br>BABCOCK & WILCOX ENTERPRISES, INC.; BWX TECHNOLOGIES, INC., f/k/a THE BABCOCK & WILCOX COMPANY; McDERMOTT INTERNATIONAL, INC.; and BABCOCK & WILCOX RETIREE HEALTH CARE PLAN,<br><br>                Defendants. | C.A. No.:<br><br>**COMPLAINT FOR BREACH OF LABOR CONTRACT AND FOR BREACH OF ERISA PLAN—CLASS ACTION**<br><br>Class Action<br><br>**Demand for Jury Trial** |

**COMPLAINT AND JURY DEMAND**

### I.   INTRODUCTION

1.   Plaintiffs Frank Belczyk, Sophie Belczyk, Michael Jurich, Dolores Scaia, and Jack E. Tallon ("Class Representatives"), on behalf of themselves and all other persons similarly situated, and the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO/CLC, and its Locals 1082, 3059, and 3488 (collectively, "USW), bring this action against Babcock & Wilcox Enterprises, Inc., BWX Technologies, Inc., f/k/a The Babcock & Wilcox Company, and McDermott International,

Inc. (collectively, along with any predecessors or successors, "Babcock & Wilcox"), and the Babcock & Wilcox Retiree Health Care Plan ("Plan").

2.  This action is brought by the Class Representatives on behalf of themselves and a class of similarly-situated retirees ("Retirees") and their eligible spouses, dependents and surviving spouses (collectively, "Class Members") pursuant to Rule 23 of the Federal Rules of Civil Procedure, and by the USW, which was the collective bargaining representative for certain Babcock & Wilcox employees.

3.  Retirees earned the right to receive retiree health care benefits throughout their retirement through decades of employment and through their payment of contributions for these benefits while they were actively employed. These rights were created through collective bargaining between Babcock & Wilcox and the USW, which represented Retirees before they retired.

4.  The successive labor agreements between Babcock & Wilcox and the USW contained provisions which established Babcock & Wilcox's obligation to provide retiree health care benefits throughout retirement, unless the USW agreed otherwise. Retirees relied on this right to receive retiree health care benefits throughout their retirement for their health care needs. Despite these contract provisions, as well as other promises to provide benefits to Class Members throughout retirement, effective January 1, 2016, Babcock & Wilcox unilaterally eliminated the retiree health care benefits it provided to Class Members who had attained age 65, replacing these benefits with limited funds provided through Healthcare Reimbursement Accounts ("HRAs"). The USW did not agree to Babcock & Wilcox's unilateral benefit reductions.

5.  Since Class Members' retiree medical benefits were the result of bargaining between labor organizations and an employer, Babcock & Wilcox's actions are actionable in this

Court under Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a).  Defendants' conduct also violates Class Members' rights under one or more employee benefit plans, and is therefore actionable in this Court under Sections 502(a)(1)(B) and 502(a)(3) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1132(a)(1)(B) and (a)(3).

## II.     JURISDICTION AND VENUE

6.      As Plaintiffs' LMRA and ERISA claims raise federal questions, this Court has jurisdiction over both Counts under 28 U.S.C. § 1331.  This Court also has jurisdiction over Count I under LMRA § 301, 29 U.S.C. § 185, and over Count II under ERISA §§ 502(e)(1) and (f), 29 U.S.C. §§ 1132(e)(1) and (f).  Venue in this judicial district is proper under LMRA § 301, 29 U.S.C. § 185, and ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2).

## III.    PARTIES

7.      Plaintiff Frank Belczyk is an adult resident of Beaver Falls, Pennsylvania.  He worked for Babcock & Wilcox at its facility in Beaver Falls ("Beaver Falls Facility") from 1951 until 1987, when he retired, and was a member of the USW bargaining unit during his employment with Babcock & Wilcox.  He is 85 years old and received retiree health care benefits from the Plan from the time of his retirement through December 31, 2016, when Babcock & Wilcox terminated his participation in the Plan.  Babcock & Wilcox has given him an option to participate in an HRA, which would provide him with limited reimbursement at the sole discretion of Babcock & Wilcox for a period of one to three years.

8.      Plaintiff Sophie Belczyk is an adult resident of Beaver Falls, Pennsylvania.  She is married to Plaintiff Frank Belczyk, who, as alleged, worked for Babcock & Wilcox at its Beaver Falls Facility from 1951 until he retired in 1987, and was a member of the USW bargaining unit.  Mrs. Belczyk is 83 years old and received retiree health care benefits from the Plan from the time

3

of her husband's retirement through December 31, 2016, when Babcock & Wilcox terminated her participation in the Plan. Babcock & Wilcox has given her an option to participate in an HRA, which would provide her with limited reimbursement at the sole discretion of Babcock & Wilcox for a period of one to three years.

9. Plaintiff Michael Jurich is an adult resident of Beaver Falls, Pennsylvania. He worked for Babcock & Wilcox at its Beaver Falls Facility from 1960 until 1986, when he retired, and was a member of the USW bargaining unit during his employment with Babcock & Wilcox. He is 81 years old and received retiree health care benefits from the Plan from the time of his retirement through December 31, 2016, when Babcock & Wilcox terminated his participation in the Plan. Babcock & Wilcox has given him an option to participate in an HRA, which would provide him with limited reimbursement at the sole discretion of Babcock & Wilcox for a period of one to three years.

10. Plaintiff Dolores Scaia is an adult resident of Canton, Ohio. She was married to David Scaia, now deceased, who worked for Babcock & Wilcox at its facility in Alliance, Ohio ("Alliance Facility") from 1947 until 1983, when he retired, and was a member of the USW bargaining unit during his employment with Babcock & Wilcox. Mrs. Scaia is 94 years old and received retiree health care benefits from the Plan from the time of her husband's retirement through December 31, 2016, when Babcock & Wilcox terminated her participation in the Plan. Babcock & Wilcox has given her an option to participate in an HRA, which would provide her with limited reimbursement at the sole discretion of Babcock & Wilcox for a period of one to three years.

11. Plaintiff Jack E. Tallon is an adult resident of Mercer, Pennsylvania. He worked for Babcock & Wilcox at its Beaver Falls Facility from 1951 until 1986, when he retired, and was a member of the USW bargaining unit during his employment with Babcock & Wilcox. He

is 83 years old and received retiree health care benefits from the Plan from the time of his retirement through December 31, 2016, when Babcock & Wilcox terminated his participation in the Plan. Babcock & Wilcox has given him an option to participate in an HRA, which would provide him with limited reimbursement at the sole discretion of Babcock & Wilcox for a period of one to three years.

12. Plaintiff USW is a labor organization headquartered in Pittsburgh, Pennsylvania. Plaintiff USW was known for decades as the United Steelworkers of America, AFL-CIO/CLC, before it changed its name in 2005 to United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO/CLC. The name change occurred as a result of a 2005 merger with the Paper, Allied-Industrial, Chemical and Energy Workers International Union, AFL-CIO/CLC ("PACE"). For a number of years, the USW was involved in negotiating CBAs with Babcock & Wilcox relating to, *inter alia*, retiree health care benefits for hourly employees working at the Beaver Falls Facility and Alliance Facility. USW Locals 1082 and 3488, which no longer exist, were also involved in negotiating the Beaver Falls contracts.

13. Plaintiff USW Local 3059 is a labor organization headquartered in Ohio. For a number of years, USW Local 3059 negotiated CBAs with Babcock & Wilcox relating to, *inter alia*, retiree health care benefits for hourly employees working at the Alliance Facility.

14. Upon information and belief, in 1978, McDermott International, Inc. acquired The Babcock & Wilcox Company. In 2007, two McDermott International Inc. subsidiaries, The Babcock & Wilcox Company and BWX Technologies, merged to form The Babcock & Wilcox Companies. In 2010, McDermott spun off The Babcock & Wilcox Companies. In 2015, The Babcock & Wilcox Companies spun off BWX Technologies, Inc. and took the name Babcock & Wilcox Enterprises, Inc.

15. Defendant McDermott International, Inc. is incorporated in Panama and has its headquarters at 757 N. Eldridge Parkway, Houston, Texas, 77079. McDermott International, Inc. is an American multinational engineering, procurement, construction and installation company with operations in the Americas, Middle East, the Caspian Sea and the Pacific Rim.

16. Defendant Babcock & Wilcox Enterprises, Inc. is a Delaware corporation with its corporate headquarters located at 13024 Ballantyne Corporate Place, Suite 700, Charlotte, North Carolina, 28277. Babcock & Wilcox Enterprises, Inc. is a global leader in advanced energy and environmental technologies and services for the power and industrial markets, with operations, subsidiaries and joint ventures worldwide.

17. Defendant BWX Technologies, Inc., f/k/a The Babcock & Wilcox Company, is a Delaware corporation with its headquarters at 800 Main St #400, Lynchburg, VA 24504. BWX Technologies Inc. is a leading supplier of nuclear components and fuel to the U.S. government, and supplies precision manufactured components and services for the commercial nuclear power industry.

18. Babcock & Wilcox Enterprises, Inc., BWX Technologies, Inc., f/k/a The Babcock & Wilcox Company, and McDermott International, Inc. are each an employer engaged in commerce, and, on information and believe, each has such extensive contacts within this judicial district that it "may be found" in this district within the meaning of 29 U.S.C. § 1132(e)(2).

19. On information and belief, Babcock & Wilcox Enterprises, Inc., BWX Technologies, Inc., f/k/a The Babcock & Wilcox Company, and/or McDermott International, Inc. was the Plan Sponsor and a fiduciary of the Plan, and they are sued in their capacities as employer, plan sponsor and/or fiduciary.

20. The Defendant Plan is or was an "employee benefit plan" within the meaning of ERISA and formerly provided retiree health benefits to Class Members. The Plan is sued as a

party that may be needed for just adjudication under Rule 19 of the Federal Rules of Civil Procedure, and also as a party responsible for providing benefits under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B).

21. Plaintiffs are informed and believe and thereupon allege that, at all times mentioned, each of the Defendants was the co-venturer, partner, alter ego, or in some manner agent or principal, or both, of the other Defendants, and in doing the things alleged was acting within the course and scope of such agency.

## IV.   STATEMENT OF FACTS

22. Babcock & Wilcox operated the Beavers Falls Facility and the Alliance Facility for many years before selling the Alliance Facility in or about 1986 and closing the Beaver Falls Facility in in or about 1988.

23. Babcock & Wilcox and the USW had a long-standing collective bargaining relationship and were parties to a series of collective bargained agreements ("CBAs") covering bargaining unit employees at the Beaver Falls and Alliance Facilities.

24. As part of the CBA negotiations, Babcock & Wilcox and the USW negotiated lifetime retiree health benefits (except as the Company and the Union might agree otherwise) that were set forth in collectively bargained contracts. A portion of these benefits were negotiated to be without cost to Class Members once they retired.

25. Retirees paid for these retiree health care benefits with foregone wages, which is generally the case when a union negotiates a lower wage in return for benefits that are not terminable or subject to reduction.

26. It was the intent of both the Babcock & Wilcox bargainers and USW bargainers that the employer would have no unilateral right to terminate or reduce retiree health benefits:

7

Rather, these benefits were to last during retirement notwithstanding the expiration of any labor agreements, unless the USW agreed otherwise.

27. For example, the Program of Hospital-Medical Benefits for Eligible Pensioners and Surviving Spouses of the Babcock & Wilcox Company Tubular Products Group Beaver Falls Works effective January 1, 1981 ("1981 Beaver Falls Program of Hospital-Medical Benefits") provides that "the Company pays the full cost of the Hospital and Physicians' Services Benefits of the Program." The 1981 Beaver Falls Program of Hospital-Medical Benefits similarly provides that Hospital and Physicians Services Benefits "are paid for entirely by the Company."

28. The 1981 Beaver Falls Program of Hospital-Medical Benefits provides as follows with respect to "Continuation of Coverage" (with emphasis added):

> **Any pensioner or individual receiving a Surviving Spouse's benefit** who shall become covered by the Program established by the Agreement **shall not have such coverage terminated or reduced** (except as provided in this Program) **so long as the individual remains retired from the Company or receives a Surviving Spouse's benefit, notwithstanding the expiration of this Agreement, except as the Company and the Union may agree otherwise.**

29. The 1981 Beaver Falls Program of Hospital-Medical Benefits also addresses "Termination of Hospital and Physicians' Services Coverage," stating:

> Hospital and physicians' services benefits coverage of a pensioner and of an individual receiving a Surviving Spouse's benefit under the Company pension plan terminates on the earliest of:
>
> (a) the day on which such person ceases to be eligible for coverage under the Program;
>
> (b) the end of the month in which notice from such person is received by the Company (see Paragraph 4.16) requesting termination of coverage under the Program; or
>
> (c) the day immediately preceding the date on which an individual receiving a Surviving Spouse's benefit under the Company pension plan remarries.

8

30. A 1975 Pensioners' and Surviving Spouses' Health Insurance Agreement of the Babcock & Wilcox Tubular Products Group in Beaver Falls ("1975 Beaver Falls Pensioners' Health Insurance Agreement") includes similar provisions, including as follows with respect to "Continuation of Coverage" (with emphasis added):

> **Any pensioner or individual receiving a Surviving Spouse's benefit** who shall become covered by the Program established by this Agreement **shall not have such coverage terminated or reduced** (except as provided in this Program) **so long as the individual remains retired from the Company or receives a Surviving Spouse's benefit, notwithstanding the expiration of this Agreement, except as the Company and the Union may agree otherwise.**

31. A 1981 Pensioners' and Surviving Spouses' Health Insurance Agreement of the Babcock & Wilcox Tubular Products Group in Alliance, Ohio ("1981 Alliance Pensioners' Health Insurance Agreement") similarly provides that "[t]he cost of the Hospital and Physicians Services Benefits under the Program shall be paid by the Company." The 1981 Alliance Pensioners' Health Insurance Agreement likewise provides with respect to "Continuation of Coverage" (with emphasis added):

> **Any pensioner or individual receiving a Surviving Spouse's benefit** who shall become covered by the Program established by this Agreement **shall not have such coverage terminated or reduced** (except as provided in this Program) **so long as the individual remains retired from the Company or receives a Surviving Spouse's benefit, notwithstanding the expiration of this Agreement, except as the Company and the Union may agree otherwise.**

32. In 1987, Babcock & Wilcox took the position that anyone retiring from the Beaver Falls Facility after December 31, 1987 would no longer enjoy lifetime retiree health benefits (except as the Company and the Union may agree otherwise). As a result, many retiree Class Members, including Class Representative Frank Belczyk, retired early, before January 1, 1988, in order to "lock in" their retiree health benefits. Upon his December 31, 1987 retirement, Babcock & Wilcox advised Mr. Belczyk in writing that "HOSPITALIZATION COVERAGE IS FREE."

9

33.     The intent of the parties in negotiating the terms governing retiree health benefits was that, once a person retired, the benefits were not subject to unilateral termination or reduction by Babcock & Wilcox but rather that the USW had to agree to any benefit reduction or termination.

34.     This intent is further shown by Babcock & Wilcox representations to this Court in an earlier retiree health case, <u>Vansovich v. Babcock & Wilcox, Company, Inc.</u>, C.A. N. 88-0085 (W.D.Pa.) (Standish, J.). The plaintiffs in this 1988 lawsuit sought relief on the ground that Babcock & Wilcox had informed active employees that they would lose their eligibility for lifetime retiree health insurance (except as the Company and the Union might agree otherwise) if they did not retire on or before December 31, 1987, forcing these employees to retire before they otherwise would have. Plaintiffs asserted that employees who already were eligible for lifetime retiree benefits could retire at any time, including after December 31, 1987, and receive these benefits. Babcock & Wilcox disagreed on this point, but the parties were in agreement that anyone who retired before December 31, 1987 enjoyed vested lifetime benefits (except as the Company and the Union might agree otherwise).

35.     Babcock & Wilcox made it absolutely clear in the <u>Vansovich</u> litigation that it intended to vest lifetime benefits for pre-December 31, 1987 retirees. For example, in an August 10, 1988 brief in support of its motion for judgment on the pleadings or summary judgment ("Babcock & Wilcox Pleading"), Babcock & Wilcox quoted the same vesting language on which Plaintiffs here rely, taken from a 1981 Health Insurance Agreement:

> **Any pensioner or individual receiving a Surviving Spouse's benefit** who shall become covered by the Program established by this Agreement **shall not have such coverage terminated or reduced** (except as provided in this Program) **so long as the individual remains retired from the Company or receives a Surviving Spouse's benefit, notwithstanding the expiration of this Agreement, except as the Company and the Union may agree otherwise.**

Babcock & Wilcox Pleading at 11 (emphasis added).  After quoting a similar provision applicable to life insurance, Babcock & Wilcox then advised the Court as follows:

> In this case, **the quoted provisions do prohibit the Company from eliminating the medical and life insurance benefits of persons who attained the status of "pensioner" during the term of the agreements.  The parties' obvious intent in including this language was to prevent the elimination of post-retirement health and life insurance benefits for persons who retired during the term of the Pensioners' Health Insurance Agreement and Benefit Agreement**.  This language thus makes these particular welfare benefits "status" benefits, i.e., benefits which are attendant to the attainment of retirement status and which survive the expiration of the Agreement….

Id. at 12-13 (emphasis added).  Babcock and Wilcox continued:

> Contrary to the contention of the named Plaintiffs, **the language of the agreements insulates the retirement benefits only of those former employees who retired while the agreements were in effect**.  The Pensioners' Health Insurance Agreement's provision guaranteeing post-expiration continuation of benefits applies by its own terms, to "[a]ny pensioner or individual receiving a Surviving Spouse's benefit who shall become covered by the Program established by the Agreement"….both agreements guarantee an individual's benefits only so long as the individual "remains retired**."….[The parties] specified that the guarantee of post-expiration continuation of coverage applied only to pensioners**, i.e., employees who had retired while the agreements were still in effect…. Although **the agreements prohibited the elimination of retirement benefits for employees who actually exercised any right they had to retire prior to the agreements' expiration**, nothing in those agreements barred the Company from changing or ceasing to provide welfare benefits to those who would retire after the agreements' expiration.

Id. at 14-17 (bold emphasis added; underlining emphasis in the original).

36.     Babcock & Wilcox reiterated this position in a transcribed statement by its attorney at a status conference before Judge Standish held August 12, 1988.

37.     Despite the parties' intent to provide lifetime benefits, in a letter dated "September 2016" captioned "Announcing Changes to Your Babcock & Wilcox (B&W) Retiree Medical Coverage," Babcock and Wilcox announced that effective January 1, 2017, it would eliminate retiree health care benefits for Retirees and their eligible dependents who were age 65 or older.  Instead of providing coverage through Babcock & Wilcox's retiree medical plan,

11

Babcock & Wilcox advised that Class Members would have to select and purchase their own individual health care coverage through OneExchange, described as a "Medicare coordinator." Babcock & Wilcox further advised that it would establish health reimbursement accounts ("HRAs") for those Class Members with "at least $750 remaining on your lifetime maximum under the B&W retiree medical plan." Babcock & Wilcox stated that for "a period of one to three years," B&W would credit unspecified "HRA credits" to Class Members accounts, further stating that "the amounts credited to your HRA and the duration of those credits will be determined by B&W, in its sole discretion." Finally, Babcock & Wilcox advised that anyone not enrolling in individual coverage through OneExchange would not be eligible for any HRA credits.

38. The USW did not agree to any of these changes.

39. Babcock & Wilcox did in fact eliminate benefits effective January 1, 2017 as described in the September 2016 notice.

40. The coverages available through OneExchange with the available HRA funds for a period of one to three years are vastly inferior to contractual retiree health care benefits Class Members had been receiving and are entitled to receive throughout their retirement.

41. All Class Members are burdened by the unilateral imposition of these reduced benefits.

42. Defendants are jointly and severally liable for the obligations arising under the collectively-bargained agreements to provide retirees health care benefits at the levels specified in the agreements.

43. By unilaterally reducing retiree health care benefits and taking the position that they can terminate coverage for all Class Members, Defendants breached their obligations to Plaintiffs and to Class Members.

## V. CLASS ACTION ALLEGATIONS

44. Class Representatives bring this action on behalf of themselves and a class consisting of all former employees of the Beaver Falls and Alliance Facilities who were represented by the USW at the time they retired (and their eligible spouses, dependents and surviving spouses), who, as of December 31, 2016, were receiving and/or were entitled to receive health care benefits from Babcock & Wilcox. Upon information and belief, all class members retired on or before December 31, 1987.

45. Upon information and belief, there are at least 1000 Class Members. The number of Class Members is large enough that joinder of individual members in this action is impracticable.

46. There are common questions of law and fact that relate to and affect Class Members, including whether retiree health care benefits were intended to last, unaltered, throughout retirement, unless the USW agreed otherwise.

47. The relief sought is common to all Class Members as set forth below in the section titled, "Relief Requested."

48. The claims of the Class Representatives are typical of the claims of all Class Members, namely that Defendants are obligated under LMRA § 301 and ERISA to provide them with retiree health care benefits, as provided under collectively-bargained agreements between Babcock & Wilcox and the USW, and that Defendants could not unilaterally reduce these benefits. There is no conflict between the Class Representatives and any other Class Member with respect to this action.

49. The Class Representatives will fairly and adequately protect the interests of the Class Members. Attorneys for the Class Representatives are experienced and capable in the field

of labor law and ERISA and have successfully litigated numerous LMRA and ERISA class actions involving retiree benefits of former union employees.

50. This action is properly maintained as a class action under Federal Rule of Civil Procedure 23(b)(2), in that Defendants have acted on grounds generally applicable to the class by unilaterally changing retiree health insurance and retiree life insurance benefits they are obligated to provide to Class Members, thereby making final injunctive relief or corresponding declaratory relief appropriate with respect to the class as a whole.

51. This action is also properly maintained as a class action under Federal Rule of Civil Procedure 23(b)(1)(A). Because of the uniform standards of conduct imposed by ERISA, the prosecution of separate actions by individual members of the class would create a risk of inconsistent adjudications that would establish incompatible standards of conduct for Defendants.

52. Alternatively, this action is maintainable as a class action under Federal Rule of Civil Procedure Rule 23(b)(3), as the common questions of law and fact described above predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

## COUNT I

**Violation of Collective Bargaining Agreements, Actionable under LMRA § 301**

**(Against Defendants Babcock & Wilcox Enterprises, Inc.,
BWX Technologies, Inc., f/k/a The Babcock & Wilcox Company,
and McDermott International, Inc., by All Plaintiffs)**

53. Plaintiffs incorporate by reference all preceding allegations as though fully set forth here.

54. The collectively bargained agreements described above providing for retiree health care benefits are "contract[s] between an employer and a labor organization" within the

14

meaning of LMRA § 301, 29 U.S.C. § 185. The contracts conferred upon all Class Members a right to retiree health care benefits throughout retirement. By unilaterally reducing this coverage, Babcock & Wilcox has breached these contracts.

55. Babcock & Wilcox's breach of its collectively bargained obligations is actionable under LMRA § 301, 29 U.S.C. § 185.

## COUNT II

### Violation of Employee Benefit Plan, Actionable under ERISA § 502(a)
### (Against all Defendants by Individual Plaintiffs Only)

56. Plaintiffs incorporate by reference all preceding allegations as though fully set forth here.

57. Defendants are obligated to provide retiree health care benefits pursuant to the terms of the *negotiated* governing ERISA documents. The collectively bargained agreements described above providing for retiree health care benefits throughout Class Members' retirements are "plan documents." Defendants violated the terms of these agreements by unilaterally reducing these benefits.

58. Defendants' repudiation of negotiated terms of the Plan is actionable under ERISA §§ 502(a)(1)(B) and (a)(3), 29 U.S.C. §§ 1132(a)(1)(B) and (a)(3). These ERISA provisions allow a participant or beneficiary to bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan," and further "to enjoin any act or practice which violates . . . the terms of the plan, or . . . to obtain other appropriate equitable relief . . . to redress such violations or . . . to enforce . . . the terms of the plan." Additionally, a participant suing under these provisions is entitled to interest on any retroactive amounts awarded.

## VI.     RELIEF REQUESTED

WHEREFORE, Plaintiffs respectfully request that this Court:

A. Certify this action as a class action and appoint Feinstein Doyle Payne & Kravec, LLC as counsel for the Class.

B. Declare that the retiree health insurance provided by the collectively-bargained agreements cannot be unilaterally terminated or modified by Defendants.

C. Direct Defendants to restore the retiree health care benefits provided to Class Members under the collectively-bargained agreements and permanently enjoin Defendants from terminating or modifying such retiree health care benefits in the future.

D. Award to Class Representative and to Class Members retiree health care benefits pursuant to the terms of the collectively-bargained agreements, and/or monetary damages or restitution or other monetary relief (plus interest), and/or other equitable relief such as reinstatement or reformation, as necessary, to restore them to the position in which they would have been but for Defendants' contractual and statutory violations.

E. Award Plaintiffs their reasonable attorneys' fees and costs incurred in this action.

F. Grant such further relief as may be deemed necessary and proper.

## VII.     JURY DEMAND

Plaintiffs request a jury trial of all issues so triable.

| | |
|---|---|
| Dated:  February 23, 2017 | Respectfully submitted, |
| | s/ Pamina Ewing<br>    Pamina Ewing (PA No. 59244) |
| Anthony Resnick (PA No. 319682)<br>Assistant General Counsel<br>United Steelworkers<br>Five Gateway Plaza, Room 807<br>Pittsburgh, PA  15222<br>Telephone:  412-562-2562<br>Email:  aresnick@usw.org | Joel R. Hurt (PA No. 85841)<br>McKean J. Evans (PA No. 309767)<br>FEINSTEIN DOYLE PAYNE<br>  & KRAVEC, LLC<br>Law & Finance Building, Suite 1300<br>429 Fourth Avenue<br>Pittsburgh, PA  15219<br>Telephone:  412-281-8400<br>Fax:  412-281-1007<br>Email:  pewing@fdpklaw.com<br>            jhurt@fdpklaw.com<br>            MEvans@fdpklaw.com |
| *Counsel for Plaintiffs* United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO/CLC, and United Steel, Paper And Forestry, Rubber, Manufacturing, Energy, Allied Industrial And Service Workers International Union, AFL-CIO/CLC, Local 3059. | *Counsel for Plaintiffs* |

17